DAVID ADAMS,

      Plaintiff,

v.                                                                    Case No. 3:17-cv-736-J-32JBT

JERRY HOLLAND, as property
appraiser of Duval County, Florida
and THE CONSOLIDATED CITY
OF JACKSONVILLE,

      Defendants.

_____

## O R D E R

    This ADEA case is before the Court on Defendants The Consolidated City of Jacksonville, and Jerry Holland, as property appraiser of Duval County, Florida's Motion for Summary Judgment. (Doc. 23). Plaintiff David Adams filed a response. (Doc. 24). With the Court's permission, Defendants filed a reply (Doc. 28), and Adams filed a sur-reply (Doc. 32). Defendants also submitted Lewis v. City of Union City, Ga., 918 F.3d 1213 (11th Cir. 2019) as supplemental authority. (Doc. 34).

## I.    BACKGROUND

    Plaintiff David Adams began working for the Duval County Property Appraiser's Office ("PAO") as a Civil Service employee in 1986. (Doc. 23-2 at

7:13-15). The PAO is part of the consolidated government of the City of Jacksonville, which has both Civil Service and appointed employees.[1] (Doc. 23-1 ¶ 4). Adams chose to remain a Civil Service employee throughout his entire career with the PAO because of the employment protections afforded by such status; in his words, he did not want to be subject to the "whim of elected officials." (Doc. 23-2 at 10:2-11:6). By contrast, appointed employees have limited employment protection and serve at the will of the authority who appoints them. (Doc. 23-1 ¶ 2). Under the Charter and Civil Service Rules and Regulations, Civil Service employees who accept appointed positions retain the right to revert to their Civil Service position or a comparable position. (Id. ¶ 3). If the Civil Service position is occupied, the appointed employee has the right to displace or "bump" the employee who occupies that position, but only if the appointed employee has greater seniority than the Civil Service employee. (Id.). When calculating an appointed employee's seniority, all the time spent in appointed positions counts as if it had been spent in the Civil Service position to which the employee would revert. (Id.).

On October 19, 2015, Property Appraiser Jerry Holland sent a memorandum to Kurt Kraft, an appointed field appraiser with the PAO,

---

[1] Article 17 of the City of Jacksonville's Charter ("Charter") and section 116.901(c) of the City's Code of Ordinances explain in detail the distinction between the two categories of employees. (Doc. 23-1 at 6-14).

notifying Kraft that he would not be retained in his appointed position. (Doc. 23-3 at 9:6-23; Doc. 23-1 at 35). Because Kraft had held Civil Service status in the past, he was entitled to revert back to the same or comparable Civil Service position he held before becoming appointed, which was Appraiser II. (Doc. 23-1 at 35). This meant that Kraft had seniority to be reverted to a Property Field Representative position, which was comparable to an Appraiser II position.[2] Only one Property Field Representative position remained in the PAO in 2015: the job held by Adams. (Doc. 23-1 ¶ 5).

Tracey Bolton, the manager of personnel services over the HR business partner and recruiting group for the City, calculated Kraft's and Adams's seniority and determined that Kraft had more seniority than Adams and could thus displace Adams from his position if he wanted. (Doc. 23-5 at 33:19-34:21). Ultimately, Kraft elected to displace Adams. (Doc. 23-3 at 31:21-32:8).

On November 3, 2015, Adams met with Kay Ehas, Chief Administrative Officer with the PAO, and Diane Moser, Director of Employee Services for the City, where he received a written Layoff Notification. (Doc. 23-1 at 40-41; Doc. 23-6 at 28:1-4). The Layoff Notification stated that "due to an appointed employee reversion back to a civil service position, there will be a reduction in force within the Property Appraiser's Office. You are identified to be laid off

_____

[2] Appraiser II was retitled Property Field Representative. (Doc. 23-1 ¶ 5).

3

from your position of Property Field Representative effective close of business October 30, 2015." (Doc. 23-1 at 40). Moser testified that the City uses the terms "reduction in force" and "layoff" interchangeably to refer to a situation where an employee loses his position. (Doc. 23-6 at 35:10-15) ("A reduction in force is basically a layoff. We within employee services use the term interchangeably, but in this instance, the reversion of Kurt Kraft triggered a layoff to David Adams.").

The PAO had no other Civil Service positions, so the City tried to find another Civil Service job for Adams outside the PAO. However, Adams said he was not interested in the available Civil Service code enforcement officer position that the City identified. (Doc. 23-6 at 19:11-20). Although there were open Field Appraiser positions at the PAO, they were appointed positions, not Civil Service positions, so Bolton and Moser did not discuss those with him. (Doc. 23-6 at 21:9-25; Doc. 23-5 at 31:10-32:6). Moser testified that appointed positions were open, but any discussion of them was not up to her because she is responsible for administering the Civil Service rules in her role as division chief reporting to the director of employee services. Appointed positions are considered higher level positions, and thus outside her purview. (Doc. 23-6 at 21:16-22:12). Bolton testified that she was unaware that the PAO was advertising for property appraiser positions at the time of Adams's layoff. (Doc. 23-5 at 22:31-17).

Adams states that no one told him about the appointed Field Appraiser jobs, and that he "would obviously prefer having an appointed Field Appraiser job as compared to being terminated and unemployed, and at no time did [he] ever indicate otherwise." (Doc. 25-1 at 2). However, Adams did not apply for any appointed positions at the PAO, testifying that his application has been on file with the City and the PAO since 1986, and that he "figured that if there was work in funding . . .[he] made [himself] available that they could pick up the phone and say, come back to work." (Doc. 23-6 at 28:9-18; Doc. 23-2 at 40:5-41:18, 43:14-24).

The PAO offered Adams a settlement agreement, akin to a severance proposal, that would allow Adams to be at full retirement at age 55 with 30 years of service; in other words, the agreement would have allowed Adams to run out his leave. (Doc. 23-6 at 8:15-21; Doc. 23-2 at 94:8-96:6). The agreement required Adams to sign a release of liability, so he did not accept it. (Doc. 23-6 at 8:22-24, 11:3-4).

Following Adams's layoff, the PAO filled some appointed Field Appraiser positions with applicants from outside the protected age class. (Doc. 25-1 at 8). Notably, the PAO also hired Robert William Rawls into an appointed Field Evaluator position after Adams's layoff; Rawls is older than Adams. (Id.; Doc. 28 at 4). Adams testified that had Kraft not exercised his right to revert to

Adams's position, Adams would still have been working at the PAO. (Doc. 23-2 at 79:17-24).

At the time Kraft displaced Adams from his Civil Service position, he was 56 years old, and Adams was 54 years old. (Doc. 24-2 at 4:15-16; Doc. 23-2 at 56:2). Thus, Kraft is older than Adams. (Doc. 23-2 at 15:18-16:6).

Adams filed a grievance with the Civil Service Board ("CSB"), contesting the accuracy of the calculation of seniority in connection with his layoff. (Doc. 23-1 at 43-48). The CSB held a hearing on June 16, 2016 to address the grievance. On July 5, 2016, the CSB issued an Order Denying Grievance, explaining that the City followed the applicable rules and regulations in the layoff and reduction in force process. Adams did not appeal the CSB's Order to the state circuit court or otherwise. (Doc. 23-2 at 23:20-23).

In March 2016, Adams filed a Charge of Discrimination with the Equal Employment Opportunity Commission based on the foregoing events. (Doc. 23-2 at 30:5-9). The EEOC issued a Dismissal and Notice of Rights on March 31, 2017, stating that following its investigation, it was unable to conclude a violation of the Age Discrimination in Employment Act ("ADEA") or Florida law had occurred. (Doc. 23-2 at 125).

On June 27, 2017, Adams filed a pro se complaint in this court, alleging age discrimination in violation of the ADEA, 29 U.S.C. § 621, et seq. (Doc. 1). On March 8, 2018, represented by counsel, Adams filed an amended complaint

against the Consolidated City of Jacksonville and Jerry Holland, as Property Appraiser of Duval County, Florida ("Defendants"), alleging age discrimination under the ADEA and the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. § 760, et. seq. (Doc. 19).

## II. LEGAL STANDARD[3]

The purpose of the ADEA is to "prohibit arbitrary age discrimination in employment," 29 U.S.C. § 621(b), and, relevant here, the statute "prohibits employers from firing employees who are forty years or older because of their age," Liebman, 808 F.3d at 1298 (citing 29 U.S.C. § 623(a)(1)). "To assert an action under the ADEA, an employee must establish that his age was the 'but-

---

[3] Although the Eleventh Circuit has foreclosed the argument—in a published opinion by a panel which included the undersigned, see Jefferson v. Sewon Am., Inc., 891 F.3d 911 (11th Cir. 2018)—Adams nonetheless raises the issue of whether summary judgment is consistent with the Seventh Amendment. (Doc. 24-4). Adams even acknowledges Jefferson in making this argument. (Doc. 24-4 at 3 n.1). Regardless, as "settled precedent forecloses any argument" that the district court intrudes "on the constitutional role of the jury when it considers whether a complaint fails as a matter of law," the Court will address this argument no further. Jefferson, 891 F.3d at 920.

Adams also raises questions regarding the appropriate legal framework for evaluating ADEA cases. (Doc. 24-4 3-4). As the City states, (Doc. 28 at 2), it is unclear to what end Adams asserts these arguments, when the appropriate framework for ADEA and FCRA claims in the Eleventh Circuit is clear. See Liebman v. Metro. Life Ins. Co., 808 F.3d 1294, 1298 (11th Cir. 2015); Mazzeo v. Color Resolutions Int'l, LLC, 746 F.3d 1264, 1266 (11th Cir. 2014) ("[A]ge-related discrimination actions under the FCRA are analyzed under the same framework[] as the . . . ADEA . . . ."). Therefore, the Court will not address the authority—much of which is from district courts outside the Eleventh Circuit—upon which Adams relies. (Doc. 24-4 at 4).

for' cause of the adverse employment action[,]" which can be done using direct or circumstantial evidence. Id. (citing Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009), and Mora v. Jackson Mem'l Found., Inc., 597 F.3d 1201, 1204 (11th Cir. 2010) (per curiam)).

In cases like this one, in which the ADEA claim is based on circumstantial evidence, the Eleventh Circuit applies the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this framework, an employee must first establish a prima facie case, which creates a presumption of discrimination. Liebman, 808 F.3d at 1298. "Once an employee has established a prima facie case, 'the burden shifts to the employer to rebut the presumption of discrimination with evidence of a legitimate, nondiscriminatory reason for the adverse employment action.' If the employer proffers a legitimate, nondiscriminatory reason, the burden shifts back to the employee to show that the employer's reason is a pretext." Id. (quoting Kragor v. Takeda Pharm. Am., Inc., 702 F.3d 1304, 1308 (11th Cir. 2012)) (citation omitted).

## III. ANALYSIS

### A. Prima Facie Case

Though not addressed by the parties, the Court must first determine what type of age discrimination case this is. This is because, at times, the City referred to its action vis-à-vis Adams as a "reduction in force." In a standard age discrimination case, a plaintiff demonstrates a prima facie case by showing:

(1) he was a member of the protected class; (2) he was subject to an adverse employment action; (3) a substantially younger person filled the discharged plaintiff's position; and (4) he was qualified to do the job from which he was discharged. <u>Liebman</u>, 808 F.3d at 1298. In a reduction in force case, the elements of a prima facie case are slightly altered, requiring factual allegations:

> (1) demonstrating that he was in a protected age group and was adversely affected by an employment decision; (2) showing he was qualified for his former position or another position at the time he was adversely affected; and (3) producing circumstantial or direct evidence from which a reasonable factfinder could conclude that his employer intended to discriminate on the basis of age in reaching the decision at issue.

<u>Diehl v. Bank of Am., N.A.</u>, 470 F. App'x 771, 775 (11th Cir. 2012) (quotations omitted) (quoting <u>Maddow v. Procter & Gamble Co.</u>, 107 F.3d 846, 851 (11th Cir. 1997)).

"A workforce reduction occurs 'when business considerations cause an employer to eliminate one or more positions within the company.'" <u>Pugliese v. Country Fresh, LLC</u>, No. 13-14257, 2015 WL 401301, at *8 (E.D. Mich. Jan. 28, 2015) (quoting <u>Barnes v. GenCorp Inc.</u>, 896 F.2d 1457, 1465 (6th Cir. 1990)). Courts in the Eleventh Circuit routinely describe typical reduction in force cases in terms of whether a position is eliminated. <u>See</u> <u>Burns v. City of Cape Coral</u>, No. 2:10-CV-573-FTM-29, 2012 WL 2179099, at *3–4 (M.D. Fla. June 13, 2012), <u>aff'd</u>, 520 F. App'x 913 (11th Cir. 2013) (citing <u>Lawver v. Hillcrest Hospice, Inc.</u>,

300 F. App'x 768, 772–73 (11th Cir. 2008) ("We have held that, in reduction-of-force cases, the employer 'seldom' seeks to replace the discharged employee."); Diehl v. Bank of Am., No. 3:09-CV-1220, 2011 WL 13174774, at *4 (M.D. Fla. Mar. 4, 2011), amended (Mar. 11, 2011), aff'd sub nom. Diehl v. Bank of Am., N.A., 470 F. App'x 771 (11th Cir. 2012) ("There is no evidence in the record, however, that Diehl was replaced by Worsham after Diehl's termination. . . . Diehl was not replaced by anyone. This is the very definition of a reduction in force."); Vega v. Invsco Grp., Ltd., No. 608CV1915ORL22DAB, 2010 WL 11507220, at *3 (M.D. Fla. Mar. 15, 2010), aff'd, 432 F. App'x 867 (11th Cir. 2011) (quoting Mauter v. Hardy Corp., 825 F.2d 1554, 1557 (11th Cir. 1987) ("However, in reduction-in-force cases, courts apply a modified prima facie case because the 'employer seldom seeks to replace the discharged employee.'")); Keener v. Utilx Corp., No. 204CV562FTM29SPC, 2006 WL 4690986, at *4 (M.D. Fla. Apr. 17, 2006) ("Where a particular job position is entirely eliminated for nondiscriminatory reasons, for plaintiff to prevail against his employer he must show that he was qualified for another available job with that employer; qualification for his current position is not enough."). Because the undisputed evidence in this case shows that Kraft displaced Adams, the Court examines whether application of the reduction in force prima facie test is appropriate.

The question of which prima facie test the Court should apply in an ADEA action has been addressed by the Eleventh Circuit. In Mazzeo v. Color

Resolutions, Int'l, LLC, 746 F.3d 1264, 1270-1272 (11th Cir. 2014), the parties disagreed about the applicable prima facie test under the ADEA. The plaintiff argued that the standard version should apply, but the defendant contended that the district court should use the reduction in force version. Id. at 1270. The district court applied the reduction in force version, concluding that the plaintiff's position had been eliminated, and he had not been replaced by a younger employee.

On appeal, the Eleventh Circuit noted that "[w]hether the standard version or the RIF version of the ADEA prima facie case applies depends on [the plaintiff's] ability to present sufficient evidence that he was replaced by a younger individual." Id. at 1271 (citation omitted). Further, a plaintiff "may demonstrate that he was replaced by showing that, after his termination, some of his former responsibilities were delegated to another employee, in addition to that other employee's own responsibilities." Id. The Eleventh Circuit found that the plaintiff had presented evidence that suggested that a younger employee, outside the protected class, replaced him shortly after his termination. Id. at 1272. Therefore, the Eleventh Circuit held that the use of the reduction in force version of the ADEA prima facie case at the summary judgment stage was precluded. The district court's grant of summary judgment was vacated and remanded, with instructions to use the standard version of the

ADEA prima facie case in evaluating the defendant's motion for summary judgment. Id.

Here, although Defendants argue that Adams cannot make a prima facie case of age discrimination, (Doc. 23 at 17), they do not explicitly raise the issue of which prima facie framework should apply. They implicitly argue that the standard version applies in their reply brief, where they state that "Plaintiff . . . has failed to show that a substantially younger individual was hired in his place," and point out that Kraft was older than Adams and had reversion rights. (Doc. 28 at 2). Only the standard prima facie framework requires a plaintiff to show that a substantially younger individual filled the position from which he was discharged.

Adams's response and sur-reply do not explain which version of the ADEA prima facie standard should apply, nor do his briefs apply the facts of the case to any prima facie standard. (Docs. 24-4, 32). Rather, Adams seems to assume he has established a prima facie case and moves directly to the issues of but for causation and whether Defendants' reason for laying him off (Kraft's decision to revert to Adams's Civil Service position) was pretextual. However, the undisputed evidence shows that Kraft is older than Adams and filled the position of Property Field Representative from which Adams was discharged.

Although the City applied the phrase "reduction in force" to Adams's layoff, the undisputed evidence shows that the City uses the terms "reduction

in force" and "layoff" interchangeably to refer to a situation where an employee loses his position. (Doc. 28 at 6; Doc. 23-6 at 35:10-15). In this case, rather than having substantive significance, the City's use of the term reduction in force is merely semantics. There is no evidence of downsizing or reorganization typically seen in reduction in force cases or that positions were eliminated at the PAO which necessitated Kraft displacing Adams. To the contrary, the evidence shows that the PAO was hiring following Adams's layoff, and nothing prevented Adams from submitting an application for an appointed position. Moreover, Adams's position was not eliminated; rather, Kraft's seniority allowed him to "bump" Adams and take his Property Field Representative position.[4] Even Adams testified that he did not believe there was an actual reduction in force. (Doc. 23-2 at 54:18-23). Under these circumstances, the reduction in force framework for determining whether Adams has established a prima facie case is not appropriate. Instead, consistent with <u>Mazzeo</u>, the Court uses the standard version of the ADEA prima facie case.

---

[4] Despite some back and forth at Adams's deposition, Adams, too, acknowledges that his position was not eliminated, but that Kraft was placed in his position. (Doc. 23-2 at 34:11-35:2). There is no evidence that Kraft's position was eliminated either. Rather, Holland terminated Kraft from his appointed position with the PAO because he felt Kraft was not happy at the PAO and did not believe Kraft could do a great job if he felt dissatisfied or like he was in a hostile work environment. (Doc. 23-4 at 7-9; Doc. 23-3 at 10:20-24).

Because an older individual replaced Adams in the position from which he was discharged, the only other way Adams can satisfy this prong of the prima facie case is to identify a similarly situated comparator outside of his protected class who was treated more favorably than he. See <u>Blackmon v. L-3 Army Sustainment LLC</u>, No. 1:16-CV-572-GMB, 2017 WL 3927608, at *7 (M.D. Ala. Sept. 7, 2017) (citing <u>Horn v. United Parcel Servs.</u>, Inc., 433 F. App'x 788, 792 (11th Cir. 2011) and <u>Nix v. WLCY Radio/Rahall Comm'ns</u>, 738 F.2d 1181, 1185-86 (11th Cir. 1984)). "When comparing the plaintiff's treatment to a non-protected employee, the plaintiff and the employee he identifies as a comparator must be 'similarly situated in all material respects.'" <u>McQueen v. Ala. Dep't of Transp.</u>, No. 17-13405, 2019 WL 1773270, at *3 (11th Cir. Apr. 23, 2019) (quoting <u>Lewis v. City of Union City, Georgia</u>, 918 F.3d 1213, 1238-39 (11th Cir. 2019) (en banc)). Ordinarily, similarly situated comparators "will have engaged in the same basic conduct (or misconduct) as the plaintiff;" "will have been subject to the same employment policy, guideline, or rule as the plaintiff;" "will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff;" and "will share the plaintiff's employment or disciplinary history." <u>Lewis</u>, 918 F.3d at 1227-28.

Adams has failed to make such a showing. Such a comparator would ostensibly be a Civil Service employee younger than forty (or at least substantially younger than Adams) who, like Adams, was due to be displaced

by an appointed employee with seniority following a choice to revert, but was treated more favorably (i.e., was not displaced or somehow received better treatment). Adams has not identified any such comparator. In fact, as Adams was the only Civil Service employee left in the PAO, (Doc. 23-6 at 41:24-42:3), it is unclear whether he could. Even if the Court considered the individuals Adams identified as "substantially younger" who were hired as Field Appraisers after he was laid off as proffered comparators—namely Robert Crittenden, Craig Russell,[5] and David Gould—those individuals fail to meet Lewis's requirements as comparators, for they are not similarly situated in all material respects; Adams cannot show that he applied for an appointed position and was turned down in favor of a substantially younger person (such as the aforementioned individuals). In addition, Adams has not shown that any individual was displaced from a Civil Service position and moved to an appointed position without applying for the job. (Doc. 28 at 4).

Under these circumstances, Adams cannot establish a prima facie case under the ADEA, and the Court need not address whether Defendants have provided a non-discriminatory reason for his discharge, or whether it was pretextual.[6] See Horn, 433 F. App'x at 796 ("the district court did not err in

_____

[5] Defendants state that Russell was hired eight months before Adams's layoff and is thus irrelevant to any inquiry regarding age discrimination. (Doc. 28 at 4).

[6] The Court is mindful of the Supreme Court's instruction in O'Connor v.

concluding that Horn failed to make out a prima facie case of discrimination because he failed to show that he was replaced by a younger employee or that similarly situated comparators who engaged in nearly identical misconduct were not terminated").[7]

## B. Other Circumstantial Evidence of Discrimination

Despite concluding that Adams has failed to meet his prima facie burden, the Court has analyzed the evidence and determined that under either a standard or a reduction in force prima facie framework, Adams has failed as a

---

Consolidated Coin Caterers Corp., 517 U.S. 308 (1996), that "[t]he fact that one person in the protected class has lost out to another person in the protected class is . . . irrelevant, so long as he has lost out because of his age." Id. at 312. "[T]here can be no greater inference of age discrimination (as opposed to '40 or over' discrimination) when a 40–year–old is replaced by a 39–year–old than when a 56–year–old is replaced by a 40–year–old." Id.; see also Liebman, 808 F.3d at 1299 (citing Carter v. City of Miami, 870 F.2d 578, 583 (11th Cir. 1989) ("[W]e have declined to hold that a plaintiff's inability to show that he was replaced by someone under forty is an absolute bar to the establishment of a prima facie case.")).

However, this case is distinguishable in that Adams lost his job to an individual in the protected class who was older—not "substantially younger." This case might be different if Kraft had been, for instance, in his forties—still in the protected class but younger than Adams. However, the proper inquiry under McDonnell Douglas is whether Kraft was "substantially younger" than Adams. He was not; he was older, and thus Adams has failed to meet his prima facie burden.

[7] Lewis changed the standard for evaluating comparators to "similarly situated in all material respects" as opposed to the prior standard of "nearly identical conduct," but that change does not help Adams here.

matter of law to demonstrate that but for his age, he would not have been laid off, or that Defendants' reason for terminating him was pretextual.

The circumstantial evidence that Adams argues supports his case—that the PAO hired younger individuals into appointed Field Appraiser positions after his termination—is unavailing. He has not presented evidence that, faced with applicants within the protected age class, Defendants chose to hire applicants outside the protected age class in a discriminatory manner. To the contrary, Adams did not apply for these positions at all, instead appearing to rely on his resume being on file for many years and that someone would affirmatively call him, give him the position, and tell him to return to work. (Doc. 23-6 at 28:9-18; Doc. 23-2 at 40:5-41:18, 43:14-24). The Court finds no inference of discrimination where Adams did not apply for any jobs at the PAO, including those ultimately given to applicants outside the protected age group.[8] See Jameson v. Arrow Co., 75 F.3d 1528, 1532 (11th Cir. 1996) ("where a job for which the plaintiff is qualified, and for which the plaintiff applies, is available at the time of termination, and the employer offers the job to an individual outside the protected age group, an inference of intentional discrimination is permissible") (emphasis added).

---

[8] Even if Adams had applied for a Field Appraiser position, the evidence shows that the PAO hired Rawls, an applicant older than Adams, which undermines his claim of age discrimination.

In addition, Adams's arguments regarding whether Defendants properly calculated his and Kraft's seniority and utilized the correct job classifications are unpersuasive. (Doc. 24-4 at 9-11). To show pretext, the plaintiff must "meet [the proffered] reason head on and rebut it, and . . . cannot succeed by simply quarreling with the wisdom of that reason." Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala., 446 F.3d 1160, 1163 (11th Cir. 2006) (citations omitted). Adams's arguments about the PAO's seniority calculations were addressed at his grievance hearing with the CSB, which found that Defendants affirmatively established that no laws were violated and that all applicable laws, rules, and regulations were followed regarding Adams's layoff.[9] (Doc. 23-1 at 43-47). Moreover, "[a]s the Eleventh Circuit has recognized time and again, '[t]he employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory [or retaliatory] reason.'" Bruce v. Sam's E., Inc., No. 4:11CV636-RH/CAS, 2012 WL 6733034, at *3 (N.D. Fla. Dec. 28, 2012) (emphasis added)

_____

[9] The CSB addressed the proposed separation agreement offered to Adams by the PAO, which would have given Adams an opportunity to remain on the payroll until attaining 30 years of service and reaching the retirement age of 55, but also contained a waiver of the right to sue. (Doc. 23-1 at 45-46). The CSB noted that the proposal would have addressed Adams's concern that he was denied his right to run out his time and attain retirement age. Adams's argument that the proposed agreement and waiver is evidence of age discrimination is unavailing, as it does not show that but for his age, he would not have been terminated.

(citing <u>Nix</u>, 728 F.2d at 1187 (Wisdom, J.) (collecting earlier authorities)). Adams himself testified at his deposition that had Kraft not exercised his right to revert to Adams's position, Adams would still have been working at the PAO. (Doc. 23-2 at 79:17-24).

"A mere subjective belief that a discharge was because of age cannot be the basis for judicial relief where an adequate nondiscriminatory reason for the discharge is presented." <u>Hornsby v. Conoco, Inc.</u>, 777 F.2d 243 (5th Cir. 1985). Such is the case here. Adams has failed to present evidence that the PAO's reason for laying him off—Kraft's reversion under the Civil Service rules—was pretextual. Moreover, the evidence he has attempted to marshal does not constitute "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." <u>Smith v. Lockheed–Martin Corp.</u>, 644 F.3d 1321, 1328 (11th Cir. 2011).[10]

## IV.  CONCLUSION

It is unfortunate that Defendants' Civil Service rules forced Adams from his long-tenured position with the PAO. And perhaps the City could have tried harder to find a solution to Adams's situation, which was not of his own making.

---

[10] Adams did not argue in his briefs that he has presented a convincing mosaic of circumstantial evidence. However, the Court is familiar with the framework and has nonetheless considered it. Regardless, even considering all of Adams's arguments together, the Court sees no evidence of a "convincing mosaic" of racial discrimination in this record.

However, the issue before this Court is not whether Adams was treated fairly or whether some reasonable employment alternative could have been found. The only issue before the Court is whether Defendants discriminated against Adams based on his age, and there is no genuine issue of material fact that they did.

Accordingly, it is hereby

**ORDERED:**

1. Defendants The Consolidated City of Jacksonville, and Jerry Holland, as property appraiser of Duval County, Florida's Motion for Summary Judgment (Doc. 23) is **GRANTED**.

2. The Clerk shall enter judgment in favor of Defendants The Consolidated City of Jacksonville, and Jerry Holland, as property appraiser of Duval County, Florida and against Plaintiff David Adams.

3. After judgment has been entered, the Clerk shall close the file.

**DONE AND ORDERED** in Jacksonville, Florida the 17th day of September, 2019.


TIMOTHY J. CORRIGAN
United States District Judge

sej

Copies:

Counsel of record